UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| ONA BRAZWELL, )<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>LIFESTANCE HEALTH, INC. )<br>)<br>  Defendant )<br>) | Civil Action No. |

**COMPLAINT AND JURY DEMAND**

1. Plaintiff, Ona Brazwell, is a resident of Newcastle, Lincoln County, Maine.

2. LifeStance Health, Inc. ("Lifestance") is Arizona Corporation doing business in Maine as a behavioral health care company with a principal place of business in Scottsdale Arizona.

3. Plaintiff Brazwell was employed by LifeStance from February 18, 2022, until March 1, 2024 as the Director of Quality Assurance.

4. At all times relevant to the actions in this complaint Plaintiff Brazwell was employed as a remote employee at her home in Newcastle, Lincoln County, Maine.

5. During her employment Plaintiff Brazwell discussed with her supervisor, who was also a female, the fact that she and the supervisor were working in a hostile work environment and that gender-based discrimination existed in the company.

6. For example, one male employee engaged in extreme bullying and pressure during meetings, so much so that Plaintiff Brazwell was forced to leave meetings early and was

driven to breaking down and crying in another meeting. Plaintiff Brazwell was also subject to rude and condescending comments by another male employee during calls and meetings.

7. In November 2023 Plaintiff Brazwell's supervisor resigned because of the conditions at work. When Brazwell's boss resigned, the next in line supervisor was the Chief Digital Officer. Brazwell reported to the Chief Digital Office as of November, 2023.

8. The day after Plaintiff Brazwell's supervisor gave notice that she was resigning, the Chief Digital Officer requested a meeting with Brazwell. During the meeting the Chief Digital Officer asked to be given a chance to make things right in the workplace. He also expressly requested that Plaintiff Brazwell stay at the company through the end of March to finish a critical project Plaintiff Brazwell was working on.

9. Despite the Chief Digital Officer's request that he be given a chance to make things right at the company, the work environment did not change.

10. Male coworkers continued to subject Plaintiff Brazwell to insulting gender-based slurs and comments in public meetings, such as calling her "a naïve little girl." Also questioning her intelligence and telling her that she "should be more calculating in what" she said.

11. These working conditions were so humiliating and degrading that Plaintiff Brazwell suffered extreme anxiety and physical illnesses because of what was going on at work.

12. On or about February, 2024, Plaintiff Brazwell complained to the Chief Digital Officer that a member of her team was terminated by the Senior Director of Data Engineering after the team member had complained about the Senior Director of Data Engineering that the termination was retaliatory and wrongful. Nothing was done to address Plaintiff Brazwell's complaint.

13. After all of the discrimination and harassment, the impact on Plaintiff Brazwell's physical and mental health and retaliation of others, she had no choice but to resign her position. On February 16, 2024, Plaintiff Brazwell wrote an email to her supervisor, coping human resources informing them that she was resigning her position. Plaintiff Brazwell expressly stated that the reasons included the unresolved hostile work environment and the recent retaliatory termination of the employee who had complained about the Senior Director of Data Engineering.

14. When Plaintiff Brazwell submitted her resignation, she followed the policies set forth in the company handbook that require that nonclinical employees provide at least four weeks' notice prior to resignation and stated that her last day of work would be April 1, 2024. Plaintiff Brazwell also respected her supervisor's express request that she stay at the company until the end of March to complete a crucial project. When Plaintiff Brazwell's prior supervisor, resigned in November 2023 she was permitted to work her five week notice period until January 2024.

15. An hour after submitting her resignation, her supervisor, the Chief Digital Officer reached out for a zoom call. During that call he told Plaintiff Brazwell that he was disappointed at how she handled her resignation. He told Plaintiff Brazwell that she should not have copied HR on her resignation and should not have mentioned a hostile work environment in her letter. Because of this, he was amending Plaintiff Brazwell's resignation so that her last day of work was March 1, 2024.

16. By the Chief Digital Officer's actions, he terminated Plaintiff Brazwell's employment in retaliation for the report she made to HR.

17. Bonus payments for 2023, which were already calculated and earned, as well as stock vesting, were scheduled to be made in March. Plaintiff Brazwell asked her supervisor about her bonus and he told her to talk to HR.

18. When Plaintiff Brazwell spoke to HR, she was told different things. First, she was told she could not get her bonus because she had not had her performance evaluation. This was untrue, Plaintiff Brazwell had her performance evaluation and met all goals for her bonus. When Plaintiff Brazwell told HR that she had her review, they changed the reason and stated that she would not get her bonus because her supervisor changed her last date of work.

19. Plaintiff Brazwell was discriminated against and retaliated against by the discriminatory and degrading conduct in the workplace and by the retaliation for reporting discriminatory and illegal conduct.

20. Plaintiff Brazwell filed a complaint with the Maine Human Rights Commission and received a right to sue letter.

21. When Plaintiff Brazwell was hired, she was promised a salary and an annual discretionary bonus of 20% of her salary to be paid in accordance with payroll practices. LifeStance policy, practice and procedure was to awarded bonuses based on company profitability and overall team performance, and was awarded to the entire team, rather than on an individual basis.

22. LifeStance policy, practice and procedure was to pay bonus in March for work completed through the end of the prior calendar year. Plaintiff Brazwell and her entire team received a bonus in March, 2023 for work completed through the end of the calendar year 2022.

23. By March 1, 2024, when Plaintiff Brazwell's employment was terminated, she successfully completed all conditions for payment of the bonus she earned in 2023.

Specifically, Plaintiff Brazwell had met all required performance goals as was evidenced by her performance evaluation for the year ending 2023. Additionally, LifeStance met its performance goals for 2023.

24. Bonuses were awarded to the team rather than individually, Plaintiff Brazwell's team members each received their bonus in March, 2024 for the performance period ending December, 2023.

25. Pursuant to her offer letter and the stock vesting plan, Plaintiff Brazwell was separately scheduled to have several thousand stock units vest in March 2024, amounting to tens of thousands of dollars in additional compensation.

26. Specifically, Ms. Brazwell's offer letter stated she would become eligible for a target grant of $80,000 in the next annual LTI (Long Term Incentive) award cycle following her start date.

27. Pursuant to the terms of the offer letter, LifeStance issued two (2) "'Restricted Stock Unit Award Agreements" to Ms. Brazwell.

28. The first LTI award was issued to Ms. Brazwell on March 23, 2022, in the amount of 8,520 restricted stock units.

29. The second LTI award was issued to Ms. Brazwell on March 6, 2023, in the amount of 23,504 restricted stock units.

30. Pursuant to the March 23, 2022 "Restricted Stock Unit Award Agreement" Ms. Brazwell received 2,130 stock units on March 23, 2023, and was scheduled to receive an additional 2,130 stock units on March 23, 2024.

31. Pursuant to the March 6, 2023, "Restricted Stock Unit Award Agreement" Ms; Brazwell was scheduled to receive 5,876 stock units on March 6, 2024.

## COUNT I: UNPAID WAGES

## 26 M.R.SA § 626

32. Plaintiff repeats and re-alleges each of the allegations contained in Paragraphs 1-31 as if fully set forth herein.

33. Plaintiff's offer letter and LifeStance policies provided for an annual bonus award to Plaintiff in the amount of 20% of her salary.

34. Plaintiff satisfied all of the conditions precedent for payment of the bonus earned in 2023.

35. The bonus payment due to Plaintiff constitutes wages under the Maine Unpaid Wages statute.

36. Defendant has failed to pay wages due in the form of Plaintiff's bonus to Plaintiff in violation of the Maine Unpaid Wages Act.

37. Plaintiff is entitled to recover her wages, liquidated damages of twice the amount of wages, plus interest cost and attorneys' fees.

## COUNT II: VIOLATION OF TITLE VII

## GENDER DISCRIMINATION AND RETALIATION

38. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1-37 of this Complaint as if fully set forth herein.

39. LifeStance subjected Brazwell to a hostile and discriminatory workplace through ongoing discriminatory and degrading treatment of women, including Plaintiff Brazwell and others in the workplace.

40. Plaintiff Brazwell complained of the discriminatory conduct in the workplace to two different supervisors and LifeStance took no corrective action.

41. Plaintiff Brazwell also complained that a supervisor had subjected a co-worker to illegal and retaliatory termination.

42. In response to Plaintiff's Brazwell's complaints she was retaliated against when her supervisor and HR expressly changed her final day of work, thereby terminating her employment, in order to deny Plaintiff Brazwell bonus compensation and stock awards.

## COUNT III VIOLATION OF THE MAINE HUMAN RIGHTS ACT

## DISCRIMINATION AND RETALIATION

43. Plaintiff repeats and re-alleges each and every allegation set forth in Paragrpahs 1-42 of this Complaint as if fully set forth herein.

44. LifeStance subjected Brazwell to a hostile and discriminatory workplace through ongoing discriminatory and degrading treatment of women, including Plaintiff Brazwell and others in the workplace.

45. Plaintiff Brazwell complained of the discriminatory conduct in the workplace to two different supervisors and LifeStance took no corrective action.

46. Plaintiff Brazwell also complained that a supervisor had subjected a co-worker to illegal and retaliatory termination.

47. In response to Plaintiff's Brazwell's complaints she was retaliated against when her supervisor and HR expressly changed her final day of work, thereby terminating her employment, in order to deny Plaintiff Brazwell bonus compensation and stock awards.

## COUNT IV: VIOLATION OF THE WHISTLEBLOWER PROTECTION ACT

48. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1-47 of this Complaint as if fully set forth herein.

49. Plaintiff reported activity that she reasonably believed to be illegal when she

reported to her supervisor and to HR that a coworker had been terminated in retaliation for complaining about discriminatory treatment.

50. Plaintiff was retaliated against for reporting illegal activity when her supervisor and HR took action designed to deny her earned bonus payments and stock grants.

51. LifeStance's actions constitute retaliation for whistleblowing activity in violation of the Maine Whistleblower Protection Act.

## COUNT V

## BREACH OF CONTRACT

52. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1-51 of this Complaint as if fully set forth herein.

53. Plaintiff Brazwell's "bonus" was specifically identified as a component of her compensation in her offer letter, subject company policies and ordinary payroll practices.

54. The offer letter, employee handbook and LifeStance policies regarding payroll payments and bonus payments constitute a contractual document between Plaintiff Brazwell and LifeStance.

55. LifeStance separately entered into a Restricted Stock Unit Award Agreement with Ms. Brazwell on March 23, 2022.

56. LifeStance entered into a second Restricted Stock Unit Award Agreement with Ms. Brazwell on March 6, 2023.

57. The company's handbook contained a provision requesting non-clinical personnel provide at least four (4) weeks notice prior to resignation.

58. Plaintiff Brazwell abided by, and relied on, the company's four (4) week notice period when she submitted her resignation letter.

59. Plaintiff Brazwell was entitled to receive a bonus payment for work she performed in 2023 prior to her termination.

60. Plaintiff Brazwell was entitled to stock units under two separate reward agreements were scheduled to vest before Ms. Brazwell's April 1st resignation date.

61. Mr. Pantaleoni acted with malice and in bad faith when he changed Ms. Brazwell's resignation date to March 1st.

62. LifeStance breached its contractual obligations to Plaintiff Brazwell when it denied her compensation she was scheduled to receive in March 2024.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

    (a) enter judgment in her favor;

    (b) award Plaintiff damages for loss of wages, including all bonus and stock grants;

    (c) declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

    (d) award Plaintiff back pay and front pay lost as a result of Defendant's discriminatory conduct;

    (e) award compensatory and punitive damages in an amount to be determined at trial and prejudgment interest thereon;

    (f) award Plaintiff statutory damages due under the Unpaid Wages Act;

    (g) award Plaintiff nominal damages;

    (h) award Plaintiff prejudgment interest;

(i) award Plaintiff her full costs, including reasonable attorneys' fees, expert fees and costs; and

(j) award such further relief as is deemed appropriate.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

Dated:  February 11, 2026

*/s/ Sally A. Morris*
Sally A. Morris, Esq. Bar No. 8479
Attorney for Ona Brazwell
Sally A. Morris, Attorney at Law
Six City Center, Suite 300
Portland, ME 04101
(207) 558-6161
smorris@morrisemploymentlaw.com